NO. 3038

CONSTRUCTION OF ARTICLE 7155, REVISED CIVIL
STATUTES

1. The terms "pasture" and "ranch" are not
necessarily synonymous.

2. Said Article applies to livestock ranging
in a single enclosure on a county boundary.

3. Said Article does not apply to livestock
kept in a definite enclosure located in a
certain county, but such livestock will be
taxed in the county where located, although
such enclosure or pasture is part of a
ranch located in several counties.

---

OFFICES OF THE ATTORNEY GENERAL

February 20, 1939

Honorable F. L. Massie
County Auditor, Wilbarger County
Vernon, Texas

Dear Sir:                    Opinion No.0245

                    Re: Manner of assessing cattle
                        on ranch covering parts of
                        several counties.

This Office is in receipt of your letter of January 30,
1939, outlining the following facts:  the W. T. Waggoner Estate
owns a large cattle ranch situated as follows: 239,044 acres in
Wilbarger, 193,841 in Baylor, 11,508 in Wichita, 24,183 in Foard,
32,544 in Knox, and 2833 acres in Archer County.  The ranch is
divided into a large number of separate pastures (there being 29
of these in Wilbarger County alone), which are separately fenced.
There are about 15,000 cattle on the ranch as a whole, but the
herds are confined in specific pastures.  You as an opinion answer-
ing the following questions:

"1.  Do the terms of Article 7155 control the
assessment of cattle in ranches lying on county bound-
aries, irrespective of such fences as may have been

placed upon the land by the property owners, and irrespective of the actual location of the cattle (with respect to county boundaries) on January first of the taxable year in question.

"2. In the event that your answer to the above inquiry is 'no', and bearing in mind that the construction which has been announced by our Supreme Court of the constitutional provision that 'all property shall be taxed where it is situated', namely, that all movable personal property which has not acquired a business situs where it is actually situated, is taxable at the domicile of the owner, kindly advise me, if, in your opinion, any of the cattle owned by the W. T. Waggoner Estate, in the event its domicile is situated in some other county, are taxable in Wilbarger County.

"3. Kindly outline the proper procedure for the determination of the number of cattle taxable in this county, based upon the above facts and the further fact that the total number of cattle on the entire ranch on the taxable date was approximately 15,000 head."

Article 7155, Revised Civil Statutes, provides:

"All persons, companies and corporations owning pastures in this State which lie on county boundaries shall be required to list for assessment, all livestock of every kind owned by them in said pastures in the several counties in which such pastures are situated, listing in each county such portion of said stock as the land in such county is of the whole pasture. All persons, companies and corporations owning any kind of livestock in pasture not their own shall list said livestock in the several counties in which such pastures are situated in the same manner; and in both cases the tax upon such livestock shall be paid to the tax collector of the several counties in which such livestock is listed and assessed."

At the time of the enactment of this statute, there were many very large ranches in this State, with no fences whatsoever, except perhaps the one encircling the whole body of land. The ranch involved in Nolan vs. San Antonio Ranch Co., 16 S. W. 1064, contained about 250,000 acres of land and ran 10,000 head of longhorns. The ranch concerned in Carmack vs. Matador Land & Cattle Company, 70 S. W. 454, embraced 920,000 acres of land and listed 16,000 head of cattle for taxation. These ranches were without internal fences.

Article 7155 does not say that when a ranch, or a body of land under common ownership or control, lies on county boundaries, the cattle shall be pro-rated, according to acreage. It might very easily have done so. On the contrary, its provisions affect only such "pastures" as lie on county boundaries. Whether a body of land is singly owned is not the only question to be asked in determining whether it is a single pasture or many.

The Legislature of 1889 was coping with the problem offered by the Waggoner ranches of that day, over which herds of cattle roamed at will from one county to another, unhampered by modern cross fences. Livestock ranging in such pastures had no particular situs. They might be in one county during one day and in another county the next, or in several different counties on the same day. Manifestly, Article 7155 was the only answer to such a situation. It was not intended to govern the situs of property whose actual location is capable of ascertainment. This conclusion in the first place is borne out by an examination of the history of the enactment of this law, now entitled Article 7155 of the Revised Civil Statutes of 1925.

In 1885, the Supreme Court of Texas, in the case of Court vs. O'Connor, 65 Tex. 334, was faced with a peculiar situation. O'Connor had cattle pastured on a pasture which was located, in part, in Aransas County, and, in part, in Refugio County. The whole pasture had a fence surrounding it, but there was no fence in the middle of it along the county line. The court said that O'Connor's ranch was in Refugio County, and that when he paid his taxes on the cattle in that county he was not subject to taxation on the same cattle in Aransas County. The court cites the Constitution of the State of Texas, Article VIII, Section 11, which provides: "All property, whether owned by persons or corporations,

shall be assessed for taxation, and the taxes paid in the county where situated." The Supreme Court says that in this particular case the situs of the cattle on January 1 cannot be determined, in that they could have been in either county on that date, or even, in fact, in both counties at different times during that day. In other words, the court is concerned only with a situation where the cattle can roam back and forth in the same pasture, and it seems definite that if all of O'Connor's cattle had been fenced off in one pasture in one of the counties, and not allowed to roam freely between the two counties, the court would not have been faced with the problem that it had before it. The court concluded that in this particular situation it was impossible to determine the situs of the cattle, and they were, therefore, taxable in O'Connor's home county.

In 1887, less than two years after this case, the Legislature enacted what is now called Article 7153 of the Revised Civil Statutes. It seems quite evident that this Article was passed specifically to provide for the situation that had existed in the O'Connor case wherein the court had found the law inadequate. The bill, as passed by the Legislature in 1887, contained an error in its wording, for in the last sentence the words "in pastures" were omitted. This was corrected by the Legislature in 1889. That this Act was passed to take care of a situation like the O'Connor case where one pasture extended into two counties, and on which the cattle were allowed to roam freely, was the conclusion, also, of the Supreme Court in 1891, four years after the law was passed, in the case of Nolan vs. San Antonio Ranch Company, where the court says, in referring to this Act:

"This law was enacted to supply an omission in the law existing at the time the facts transpired, which give rise to the case of Court v. O'Connor, and to give effect in an equitable manner

to the provision of the constitution which declares that "all property, whether owned by persons or corporations, shall be assessed for taxation, and the taxes paid in the county where situated; ... 'Const. art. 8, sec. 11."

We would further observe that a statute attempting to permit one county to tax property having a definite situs in another county would be of doubtful constitutionality. Article 8, Sec. 11, of the Texas Constitution, requires that "all property, whether owned by persons or corporations shall be assessed for taxation, and the taxes paid in the county where situated."

True, in Great Southern Life Ins. Co. vs. City of Austin, 243 S. W. 778, the Supreme Court held that such constitutional provision was but declaratory of the common law, and that intangible property, and, in some instances, tangible personal property, was "situated" at the domicile of the owner, and taxable there, within the Constitution. However, we find the following significant language in the opinion of Chief Justice Phillips in that case:

"Under the common law, 'mobilia sequuntur personam' was a well-settled maxim, and personal property of every description was taxable only at the domicile of its owner, regardless of its actual location. This is still the general principle which the taxable of personal property rests. 26 R. C. L. pars. 241, pp. 273, 274. But even prior to the adoption of the principle it had been abrogated to the extent that, as between different towns and taxing districts, certain classes of tangible personal property had a taxable situs where employed in business, regardless of the domicile of its owner. 26 R. C. L. pars. 244, pp. 276, 277; Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct. 876, 35 L. Ed. 613; First Board of Assessors v. Comptoir National D'Escompte, 191 U. S. 388, 24 Sup. Ct. 109, 48 L. Ed. 232."

We find the following language in 26 R. C. L., page 277:

"Tangible articles, like other tangible personal property, are taxable at the domicile of the owner unless they acquire a business situs elsewhere, and it is perfectly competent in a state that all articles of this kind be taxed in the place in which they are kept, regardless of the domicile of the owner; but such a statute does"

not authorize the taxation of animals in the place where they happen to be on the tax day. An animal is kept where it is habitually housed or where it is found the greater part of the time." (Underscoring ours)

The following is from 61 C. J., p. 588:

"In accordance with the rule as set up and developed in respect of tangible personal property generally, it has been held or recognized that cattle and other domestic animals may have a taxable situs where they are actually located or belong apart from the domicile or residence of the owner. So, even in the absence of a specific statutory provision as to situs, it has been held that cattle kept in a certain place apart from the place of the owner's domicile are not taxable at such domicile, and the right of a county in which the owner does not reside to tax live stock which has never been within the territorial boundaries of such county has been denied, notwithstanding a statutory provision purporting to confer such right."

We would, therefore, expect the Texas courts to hold that where livestock have acquired a definite location of their own they would be taxed in the county where located, although the owner has his domicile in another county, and, such was the holding in Clampitt vs. Johnson, 49 S. W. 368. See also Nolan v. Ranch Co, supra.

Hence, we think it appears that the above constitutional provision requires the taxation of livestock in the county where the same have acquired a definite location, when such is the case. A construction of Article 7153 which would have a contrary effect is forbidden.

Your first question is answered in the negative, and the second in the affirmative.

Article 7153 does, of course, apply to the enclosures lying on county boundaries. Cattle or other livestock running in an enclosure, which lies wholly in one county, should be assessed in such county on the same principle as if owned separately from those in other counties. This answers your third question